# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

CASWELL PRODUCTS LLC,

     Plaintiff,

   v.

NOSTALGIA PRODUCTS LLC, and
NOSTALGIA PRODUCTS GROUP LLC,

     Defendants.

Civil Action No:

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Caswell Products LLC ("Plaintiff" or "Caswell"), by its undersigned attorneys, files this Complaint for patent infringement against defendants Nostalgia Products LLC and Nostalgia Products Group LLC (collectively, "Nostalgia"), and alleges as follows:

## NATURE OF ACTION

1.     This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 100 *et seq*., including 35 U.S.C. § 271, arising from Nostalgia's actions, including making, using, selling, and/or offering for sale one or more products or methods in violation of U.S. Patent No. 10,582,802.

2.     The asserted patent claims, *inter alia*, a food cover for use in a microwave which houses a set of magnets for magnetically attaching the cover to the roof of a microwave when not in use.

3.     The Parties entered into a License Agreement (as defined *infra*), which Nostalgia subsequently terminated unilaterally.

HB: 4927-2456-7982

4. Nostalgia, after terminating the License Agreement, makes, imports, distributes, advertises, offers to sell, and sells infringing products in the United States.

## THE PARTIES

5. Plaintiff Caswell Products LLC is a limited liability company organized and existing under the laws of the State of Minnesota with a principal place of business at 10522 266th Ave. NW, Zimmerman, MN 55398.

6. Defendant Nostalgia Products LLC is a limited liability company organized under the laws of the State of Florida with a Principal Office Address of 9816 Brassie Bend, Naples, FL 34108 and a Registered Agent Office at 100 Wilburn Road, Suite 100, Sun Prairie, Wisconsin, 53590. Upon information and belief, Nostalgia Products LLC also has an office address at 1471 Partnership Drive, Green Bay, Wisconsin, 54304.

7. Defendant Nostalgia Products Group LLC is a limited liability company organized under the laws of the State of Delaware with a Principal Office Address of 1471 Partnership Drive, Green Bay, Wisconsin 54304 and a Registered Agent Office at 100 Wilburn Road, Suite 100, Sun Prairie, Wisconsin 53590.

## JURISDICTION AND VENUE

8. This is an action for infringement of U.S. Patent No. 10,582,802 (the "'802 Patent").

9. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has personal jurisdiction over Nostalgia Products LLC because, on information and belief, it has committed acts of infringement in Wisconsin as described herein.

2

12. This Court has personal jurisdiction over Nostalgia Products LLC because, in the Parties' prior business relationship, Nostalgia Products LLC listed the above office address in Green Bay, Wisconsin, as its contact address.

13. Nostalgia Products LLC, therefore, on information and belief, has sufficient connections to Wisconsin related to the allegations contained herein.

14. This Court has personal jurisdiction over Nostalgia Products Group LLC because, on information and belief, it has committed acts of infringement in Wisconsin as described herein.

15. This Court has personal jurisdiction over Nostalgia Products Group LLC because, on information and belief, its principal place of business is in Wisconsin, making it "at home" in this state, granting this Court general jurisdiction over Nostalgia Products Group LLC. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged in this Complaint were committed by Nostalgia Products LLC and Nostalgia Products Group LLC in this district.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because Nostalgia Products LLC has committed acts of infringement in this district and, pursuant to the Parties' prior business relationship, Nostalgia Products LLC, on information and belief, operates in conjunction with Nostalgia Products Group LLC out of its Green Bay office.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because Nostalgia Products Group LLC has committed acts of infringement and has a regular and established place of business in this district.

HB: 4927-2456-7982

## BACKGROUND

### Asserted Patent – U.S. Patent No. 10,582,802

19.     On March 10, 2020, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 10,582,802 (the "'802 Patent") entitled "Microwave Splatter Cover or Enclosure." A true and correct copy of the '802 Patent is attached hereto as Exhibit A.

20.     Caswell Products LLC is the owner of all rights, title, and interest in and to the '802 Patent.

21.     The '802 Patent relates to and claims a reusable microwave splatter cover that is storable in the microwave oven on an interior surface via one or more microwave-safe magnets. Among other things, the claimed cover is placed face-down over a plate of food to protect the microwave from potential food splatter and other related hazards. The cover includes vents allowing for air flow to minimize condensation on the interior of the cover, an outer rim for supporting the cover when it is in use, and, in some embodiments, leg posts on the outer rim to raise the height of the cover, permitting air flow throughout the cover during cooking.

22.     Prior to the invention of the '802 Patent, existing solutions for keeping a microwave oven clean during cooking suffered from numerous drawbacks and deficiencies. Paper towels placed over food fell off during cooking, particularly in microwave ovens with rotating carousels, or got into the food, creating a mess. Conventional plastic plate covers and splatter guards became extremely hot to the touch and caused food to become soggy due to steam building up inside the cover. In addition, the conventional plastic plate covers and splatter guards were large and occupied valuable cabinet or drawer space in the kitchen when they were not in use.

4

23. The instant disclosure solved these drawbacks. The claimed cover remains generally cool to the touch during and after cooking, minimizes condensation build-up inside the cover, and stores conveniently on the interior surface of the microwave oven via one or more microwave-safe magnets integrated into the cover member, thereby eliminating the need to store the cover in a drawer or cabinet and reducing kitchen clutter.

**Enforcement History**

24. Since obtaining the rights to the '802 Patent, Caswell has vigorously enforced its intellectual property rights.

25. Caswell has utilized numerous services, including Red Points and Koppa Brand Protection, to assist with discovering and removing infringing products across a variety of websites and marketplaces.

26. Caswell has additionally removed numerous infringing products from Amazon.com using Amazon's Patent Evaluation Express Program ("APEX").

27. Using APEX, Caswell has successfully taken down listings for products that include a magnet with a metallic coating and that are substantially similar to the Accused Product (as defined *infra*).

28. In total, Caswell has removed hundreds of infringing products.

**Nostalgia License and Termination**

29. In January 2022, Caswell notified Nostalgia that it was selling a product that infringed the '802 Patent and demanded that Nostalgia cease all such sales.

30. Following Caswell's January 2022 notice of infringement, Caswell Products LLC and Nostalgia Products LLC entered into a License Agreement (the "License Agreement") effective April 8, 2022.

HB: 4927-2456-7982

31. Under the License Agreement, Caswell, as licensor, granted Nostalgia, as licensee, an exclusive worldwide license to advertise, promote, market, sell, and distribute the microwave splatter cover product covered by the '802 Patent in two exclusive retail accounts, Walmart and Meijer.

32. On May 17, 2023, Caswell's counsel sent formal written notice to Nostalgia claiming that Nostalgia was in breach of the License Agreement and demanding that Nostalgia cure on or before June 17, 2023.

33. Nostalgia's Chief Financial Officer subsequently informed Caswell's counsel that Nostalgia had stopped all production of the license product, that Nostalgia had no remaining inventory, and that Nostalgia sought to terminate the License Agreement.

34. Pursuant to Section 4(b)(3), Nostalgia unilaterally terminated the License Agreement, effective May 31, 2023.

## Nostalgia Begins Selling a New Infringing Product

35. Thereafter, Caswell learned that Nostalgia had begun selling a product that was substantially and in all material respects similar to the product that was the subject of the License Agreement.

36. On or about November 27, 2023, Caswell purchased a Nostalgia product branded with the "HomeCraft" brand name, namely, a HomeCraft, 12-inch Microwave Plate Cover Shield with Magnets from Walmart.com (the "Accused Product").

37. The packaging for the Accused Product lists "Nostalgia Products, 1471 Partnership Drive, Green Bay, WI 54304" as the selling entity.

38. The address listed on the packaging of the Accused Product is the Principal Office Address of Nostalgia Products Group LLC.

HB: 4927-2456-7982

39.     Since terminating the License Agreement, Nostalgia has offered the Accused Product for sale, at least, on Walmart.com and in physical Walmart stores and continues to offer the Accused Product for sale.[1] A true and correct capture of the Accused Product's store page is attached hereto as Exhibit B.

40.     Caswell had, at one point, successfully informed Walmart about the Accused Product's infringement on the '802 Patent, resulting in Walmart removing the Accused Product from its website. The Accused Product's store page was later restored.

41.     HomeCraft is a registered trademark of Nostalgia Products LLC registered with, at least, serial numbers 88981100 and 88185022.

42.     Nostalgia, therefore, manufactured, sold, and continues to manufacture and sell the Accused Product.

43.     Soon after purchasing the Accused Product, Caswell submitted the magnets contained within the Accused Product for metallurgical testing. A true and correct copy of the results of this testing is attached hereto as Exhibit C.

44.     The testing revealed that the magnets housed within the Accused Product were neodymium magnets coated in zinc plating.

**The Accused Product Infringes the '802 Patent**

45.     The Accused Product Infringes at least independent Claims 1 and 12 of the '802 Patent, as well as several dependent claims.

46.     Claim 1 of the '802 Patent claims the following:

A cover member assembly for use in a microwave oven comprising: a housing member configured for covering a food item during microwave cooking, the

---

[1] *See* https://web.archive.org/web/20240704192329/https://www.walmart.com/ip/HomeCraft-12-inch-Microwave-Plate-Cover-Shield-with-Magnets/846215770?from=%2Fsearch (archived July 4, 2024, accessed July 1, 2026); Exhibit B.

7

housing member with an open end having an outer rim adapted to support the housing member in a face-down configuration, the housing further including at least one ventilation portion to permit air flow, wherein the outer rim includes a set of leg posts protruding therefrom configured to facilitate air flow up through the housing member; and at least one magnetic member integrated into the housing member, the at least one magnetic member configured to facilitate adhering of the housing member to an interior surface of a microwave oven, the at least one magnetic member comprising a magnet and an enveloping member, wherein the enveloping member further comprises one of a metal foil or metallic coating configured to shield the magnet during microwave cooking of the food item.

47.     The Accused Product is named "HomeCraft 12-inch Microwave Cover Shield with Magnets." Further, the product is described as a "plate cover shield" that will "keep your microwave safe and protect it from food splatter while you heat your food." Therefore, the Accused Product is a cover member assembly for use in a microwave.[2]

48.     Further, the cover member assembly includes a housing member configured for covering a food item during microwave cooking. The Accused Product is comprised of a plastic, hollow dome-like object. The interior of the hollow dome functions by encapsulating the plate while in the microwave. The object is advertised to cover food while cooking in the microwave, as depicted in Image 1 below:

---

[2] Unless otherwise noted, all images and quotes were obtained from the website captured in Exhibit C.

HB: 4927-2456-7982





Image 1: Advertisement of Accused Product as "Microwave Plate Cover Shield" (Unaltered)

49. The housing member of the Accused Product possesses an open end having an outer rim adapted to support the housing member in a face-down configuration. The Accused Product is advertised for use in a face-down configuration. The Accused Product further includes an outer rim to facilitate safely and evenly placing the Accused Product over top of a plate of food, as shown by Image 2 below:

9

HB: 4927-2456-7982



Image 2: Outer Rim at Accused Product's Open End (Arrow Added)

50. The housing member of the Accused Product includes at least one ventilation portion to permit air flow. The Accused Product contains a plurality of cut-out strips in the top portion of its dome-like structure to facilitate air flow as advertised in Image 3 below:

10

HB: 4927-2456-7982



Image 3: Ventilation Strips (Unaltered)

51.  The ventilation strips of the Accused Product are further shown in Images 4 and 5 below:

HB: 4927-2456-7982



Image 4: Top View of Accused Product Showing Ventilation Strips (Arrows Added)

HB: 4927-2456-7982



Image 5: Perspective View of Accused Product Showing Ventilation Strips (Arrows Added)

52.     The housing member of the Accused Product includes four leg posts protruding from the outer rim, which create a void between the leg posts when the Accused Product is in a face-down configuration and ensure that the Accused Product is not resting on its outer rim. The voids between the leg posts facilitate air flow through the housing-member. The leg posts of the Accused Product are shown in Image 6 below:



Image 6: Leg Posts of Accused Product (Arrows Added)

53.     The Accused Product has four magnets integrated into the top of its dome-like structure, the housing member, as depicted in Image 7 below:

HB: 4927-2456-7982



Image 7: Magnetic Strips of Accused Product Adhering to Microwave Interior Roof (Unaltered)

54. The magnetic strips on the top of the dome-like structure of the Accused Product enable the Accused Product to magnetically adhere to the roof of microwave oven interiors as shown in Image 7 above.

55. The magnets of the Accused Product, as shown by the metallurgical testing, are comprised of a neodymium magnet and a zinc coating that completely envelopes the magnet. Therefore, the magnetic members include both a magnet and enveloping member. Ex. C.

HB: 4927-2456-7982

56. Zinc is a metal and the zinc coating shields the magnets during cooking in a microwave oven. Therefore, the enveloping member further comprises a metallic coating configured to shield the magnet during microwave cooking of the food item. Ex. C.

57. Claim 12 of the '802 Patent claims the following:

a cover member for use in a microwave oven comprising: a housing member configured for covering a food item during microwave cooking, the housing member having a closed end and a lower portion with an open end; and at least one magnetic assembly integrated into the closed end of the housing, the at least one magnetic assembly configured to facilitate adhering of the housing member to an interior surface of the microwave oven, the at least one magnetic assembly comprising a magnet member and an enveloping member, wherein the enveloping member further comprises one of a metal foil or metallic coating configured to shield the magnet member during microwave cooking of the food item.

58. As explained above, the Accused Product is named "HomeCraft 12-inch Microwave Cover Shield with Magnets." Further, the product is described as a "plate cover shield" that will "keep your microwave safe and protect it from food splatter while you heat your food." Therefore, the Accused Product is a cover member for use in a microwave oven.

59. As explained above, the Accused Product is comprised of a plastic, hollow dome-like object shape and is advertised to cover food while cooking in the microwave. The interior of the hollow dome functions by encapsulating the plate while in the microwave. *See* Image 1.

60. The housing member of the Accused Product includes a closed end and a lower portion with an open end as it is a dome-shaped object with a hollow interior. The top or apex of the dome constitutes the closed end. *See* Image 7.

61. As described above, the housing member of the Accused Product has four magnets integrated into the closed end or apex of its dome-like structure. *See* Image 7.

HB: 4927-2456-7982

62. As described above, the magnetic strips on the closed end or apex of the dome-like structure of the Accused Product enable the Accused Product to magnetically adhere to the interior of microwave ovens. *See* Image 7.

63. As described above, the magnetic assembly comprises a magnet and a zinc coating that fully envelopes the magnet, namely, a magnet and enveloping member. Ex. C.

64. As described above, the enveloping member is a metallic coating (Zinc) configured to shield the magnet member during microwave cooking. Ex. C.

**Nostalgia is Willfully Infringing the '802 Patent**

65. On December 14, 2023, Caswell sent a letter to Nostalgia informing it that the Accused Product infringed the '802 Patent. A true and correct copy of the December 14, 2023, letter is attached hereto as Exhibit D.

66. In this letter, Caswell provided the metallurgical testing to Nostalgia, informing Nostalgia that the Accused Product was covered by the claims of the '802 Patent.

67. In its response letter, Nostalgia claimed it had cancelled the License Agreement because it had redesigned the magnets in the Accused Product. A true and correct copy of Nostalgia's response letter is attached hereto as Exhibit E.

68. Specifically, Nostalgia argued that it switched from wrapping the magnets in a separate aluminum foil to applying a zinc plating, and that the zinc plating was integrated into the magnet and therefore not a distinct enveloping member.

69. Nostalgia's position is objectively baseless. The '802 Patent expressly describes a metal-coated magnet as an embodiment of the enveloping member. Ex. A, Col. 6:51-56.

HB: 4927-2456-7982

70. Nostalgia entered into the License Agreement with full knowledge of the '802 Patent and its claim language, and by doing so inherently acknowledged that its prior product fell within the patent's scope.

71. Nostalgia therefore had actual knowledge that its redesigned product—which substituted one metallic enveloping member (aluminum foil) for another (zinc plating)—remained within the scope of the '802 Patent's claims.

72. Nostalgia nonetheless terminated the License Agreement and began selling the Accused Product. It has offered no credible explanation for that decision. Nostalgia therefore terminated the License Agreement with the intent to infringe the '802 Patent.

73. Nostalgia, therefore, has been and continues to willfully infringe the '802 Patent.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,582,802**

74. Caswell repeats and incorporates by reference the allegations of the preceding paragraphs.

75. Caswell is the owner of the '802 Patent. Caswell possesses the right to enforce the '802 Patent and the right to recover for infringement thereof, including damages for any past infringement.

76. As set above, the Accused Product satisfies each and every limitation of Claims 1 and 12 of the '802 Patent, along with numerous dependent claims. Nostalgia, therefore, by selling the Accused Product, has directly infringed and continues to directly infringe one or more claims of the '802 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing the Accused Product and any other substantially similar products, without authorization or license from Caswell.

HB: 4927-2456-7982

77. Nostalgia has indirectly infringed and continues to indirectly infringe one or more claims of the '802 Patent by inducing third parties, including retailers, distributors, and end users, to directly infringe the '802 Patent. Specifically, Nostalgia is aware of the '802 Patent, has actively encouraged and instructed third parties, retailers, and distributors to sell the Accused Product in a manner that infringes the '802 Patent, and third parties, retailers, and distributors have infringed the '802 Patent by selling the Accused Product.

78. Nostalgia contributorily infringes one or more claims of the '802 Patent by selling and offering to sell the Accused Product, which is material to practicing the inventions claimed in the '802 Patent, which Nostalgia knows to be especially made or adapted for use in an infringing manner, and which has no substantial non-infringing use.

79. Nostalgia's infringement of the '802 Patent is willful. As described above, Nostalgia had actual notice of the '802 Patent no later than January 2022, entered into a License Agreement with Caswell covering the '802 Patent, terminated the License Agreement with the intent to continue selling a product infringing the '802 Patent, and has offered objectively baseless arguments in an attempt to justify its continued infringing conduct.

80. Nostalgia will continue to infringe the '802 Patent unless enjoined by this Court.

81. Caswell has been and continues to be damaged by Nostalgia's infringement of the '802 Patent in an amount to be determined at trial.

82. Caswell has suffered irreparable injury for which there is no adequate remedy at law and will continue to suffer such irreparable injury unless Nostalgia's infringement of the '802 Patent is enjoined by this Court.

19

83. Nostalgia's conduct makes this an exceptional case; Caswell should therefore be awarded enhanced damages and its reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285 and other applicable rules, statutes, and law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Caswell Products LLC requests that this Court enter judgment in its favor and against Defendant Nostalgia Products LLC and Defendant Nostalgia Products Group LLC and grant the following relief:

A. A judgment that U.S. Patent No. 10,582,802 was duly and legally issued, is valid, and is enforceable;

B. A judgment that Nostalgia has directly and/or indirectly infringed one or more claims of the '802 Patent, literally or under the doctrine of equivalents, and that such infringement has been willful;

C. A permanent injunction enjoining and restraining Nostalgia, its officers, directors, agents, servants, employees, attorneys, successors, assigns, and all those acting in concert or participation with it, from directly or indirectly infringing the '802 Patent;

D. A judgment and order requiring Nostalgia to pay all damages arising from its infringement of the '802 Patent, including treble damages for willful infringement pursuant to 35 U.S.C. § 284, together with pre-judgment and post-judgment interest;

E. A determination that this is an exceptional case pursuant to 35 U.S.C. § 285, and a judgment and order directing Nostalgia to pay Caswell's costs and expenses of this action and reasonable attorneys' fees, with interest; and

F. Such other and further relief as the Court deems just and equitable.

20

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury of any and all issues triable of right before a jury.

Dated: July 13, 2026

Respectfully submitted,

/s/ Stephen R. Howe
Stephen R. Howe (WI# 1102417)
**HUSCH BLACKWELL LLP**
511 N. Broadway, Suite 1100
Milwaukee, WI 53202
Telephone: 414-273-2100
Facsimile: 414-223-5000
Steve.Howe@huschblackwell.com

Jeffer Ali (EDWI# 024947)
Joseph Graen (MN# 0403587)*
HUSCH BLACKWELL LLP
80 S. Eighth Street, Suite 4800
Minneapolis, MN 55402
Telephone: 612-852-3610
Facsimile: 612-852-2701
jeffer.ali@huschblackwell.com
joseph.graen@huschblackwell.com

*Request for admission forthcoming*

***Attorneys for Plaintiff***
***Caswell Products LLC***

21