**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

---

CASWELL PRODUCTS LLC,

Plaintiff,

v.

NOSTALGIA PRODUCTS LLC and
NOSTALGIA PRODUCTS GROUP LLC,

Defendants.

Case No: 1:26-cv-01235-BBC

**JURY TRIAL DEMANDED**

---

**ORDER REGARDING DISCOVERY OF**
**ELECTRONICALLY STORED INFORMATION (ESI)**

---

## I. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules. Nothing in this order is intended to alter or affect any party's rights or obligations under any order by the assigned District Judge, but shall be construed instead, wherever possible, as consistent with any order by the assigned District Judge.

## II. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Federal Rules of Civil Procedure and the Local Rules of this Court. The parties acknowledge that they have reviewed and shall reference the Court's Civil Procedures when seeking to resolve discovery disputes about ESI during meet-and-confer conferences.

As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery

tactics are cost-shifting considerations. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

## III. DATA SOURCES AND PRODUCTION FORMAT

The following data sources are not considered reasonably accessible and will not be discoverable or subject to retention or preservation, given the disproportionate cost of retaining, maintaining, searching, and reviewing the categories in comparison to the information contained therein: employee SMS or "text" messages; instant messages; employee electronic calendar entries; information stored in personal data assistants (PDS); "deleted," "slack," "fragmented," or "unallocated" data on hard drives; random access memory (RAM) or other ephemeral data; on-line access data such as temporary internet files, history, cache, cookies, etc.; data in metadata fields that are frequently updated automatically, such as last opened data, and not specifically required in **Appendix A**; backup data that is substantially duplicative of data that is more accessible elsewhere; and other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

The parties are to produce responsive ESI intact at the family level, including all attachments; however, a party need not produce attachments to items included on a privilege log unless those items are responsive, unique, material, non-duplicative, and not privileged.

## IV. SEARCH PROCEDURE

A. **Filtering.** In an effort to control costs and reduce the volume of ESI that is not relevant to the matter, the parties may filter ESI using the following techniques:

1. **Custodians.** Each side may limit its initial collection and review of email to the custodians likely to have the most relevant discoverable information in their possession, custody, or control. The parties agree that, if requested by the receiving party based on a reasonable belief that the inclusion of additional custodians would likely result in the production of additional

non-cumulative responsive documents by the producing party, they will negotiate in good faith the inclusion of additional custodians. If no agreement is reached, either party may submit the matter to the Court.

2. **Search Terms.** The parties may use reasonable search terms to filter for responsiveness prior to review and production. The parties agree that, if requested by the receiving party based on a reasonable belief that the use of certain search terms would likely result in the production of additional non-cumulative responsive documents by the producing party, they will negotiate in good faith the use of such search terms. If no agreement is reached, either party may submit the matter to the Court.

3. **Most Inclusive Email in Chain.** The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members, and may exclude lesser inclusive copies. The parties must produce all related family members and lesser inclusive copies if they include attachments or other unique information. Upon reasonable request, the producing party will produce a lesser inclusive copy that can be located after a reasonable search.

B. Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

C. In responding to production requests under Fed. R. Civ. P. 34 and 45, the parties will comply with the specifications set forth in **Appendix A**, absent a showing of good cause.

D. The parties are not obligated to produce stand-alone duplicates of the same electronic document or electronic mail file so long as the metadata is the same. To the extent a document is deduplicated across multiple custodians the parties shall provide a DUPE CUSTODIAN or ALL CUSTODIAN metadata field with each document production and at the time that document production is complete or reasonably complete.

E. The parties are not obligated to search archives or repositories that contain electronic documents with creation or modification dates that indicate that the documents are not relevant to any claims or defenses in this case.

## V. DOCUMENTS PROTECTED FROM DISCOVERY

Inadvertent production of ESI subject to work product immunity or the attorney-client privilege shall not, by that act alone, constitute waiver of the immunity or privilege, provided that the producing party notifies the receiving party in writing promptly upon learning of the same. Such inadvertently-produced ESI, and all copies thereof, shall be returned to the producing party or certified destroyed upon request. No use may be made of such ESI subsequent to the request to return them except to challenge the privilege claim with the Court or as otherwise determined by the Court. Nothing in this Order shall prevent any party from requesting that the Court order the production of any such inadvertently-produced ESI; however, the fact of the inadvertent production shall not be used as an argument that the attorney-client privilege or other protections have been waived by the producing party. Nothing in this Order prevents any party from petitioning the Court for the return of later discovered, inadvertently produced ESI that are subject to work product immunity or attorney-client privilege. A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court, in which event the disclosure is also not a waiver in any other federal or state proceeding.

## VI. PRIVILEGE LOGS

A. A producing party shall create a privilege log of all documents fully withheld from production or produced with redactions on the basis of a privilege or protection, unless otherwise agreed or excepted by this Stipulated Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including

author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. The Parties agree to meet and confer on the selection of a mutually agreeable date and time to exchange privilege logs.

B. Communications and work product involving counsel that post-date the filing of the complaint need not be placed on a privilege log.

C. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

## VII. NO WAIVER

By complying with this ESI Protocol, no party waives any objection to the production of the Documents, tangible items or things, and ESI that is preserved. Furthermore, nothing contained herein relieves the parties of their obligations to preserve evidence under other applicable laws, procedures, or regulations.

## VIII. PROTECTIVE ORDER

The production of ESI is subject to the parties' rights under the Protective Order.

## IX. COSTS

Each party shall bear its own costs of producing relevant hard copy documents and ESI in its possession or control, except as the Court orders or the parties otherwise agree.

## X. MODIFICATION

This Stipulated Order may be modified by a stipulation of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

**Dated: October 21, 2026**

***s/ Byron B. Conway***
**Honorable Byron B. Conway**
**United States District Judge**

## APPENDIX A

**IMAGES**

The parties agree to produce electronic documents in single page 300 dpi group IV (1 bit) TIFF format for black/white documents and single page JPG format for color documents. The parties agree to produce paper and hard copy documents in single page 300 dpi group IV (1 bit) TIFF format for black/white documents and single page JPG format for color documents.

TIFF files shall be named as e.g., "<PageID>.TIF" with no spaces in the file name. JPG images shall be named as e.g., "<PageID>.JPG" with no spaces in the file name.

Produced images will be provided in a folder called "IMAGES" on the production media. All TIFF/JPG images for a single document will be in one subfolder within the IMAGES folder, and the number of image files in any one subfolder will not exceed 1000.

Each image shall be branded with the unique Bates number and the confidentiality designation, if any.

The parties each reserve the right to request and receive native files for produced image records where visibility, usability, or functionality is impaired by the image/extracted text formatting.

**NATIVE FILES**

File types which do not render in a usable manner when converted to image with extracted text, such as Microsoft Excel, Microsoft PowerPoint, spreadsheets, audio or video files, CAD/drawing files, multimedia files, and any other similar file types which may necessitate the need to review natively shall be produced in native format.

All native files must have a corresponding image placeholder with the correct Bates Begin ("BATESBEG") number and confidentiality designation, if any, and information in the relevant load file sufficient to permit the native files to be associated with the relevant metadata.

The file name of each native file with equal the production BATESBEG number of the corresponding page and have the same file extension as the original, with a corresponding path reference appearing in the File-Path field of the load file. Native files will be provided in a folder called "NATIVES" on the production media.

The parties each reserve the right to request and receive native files for produced records where visibility, usability, or functionality is impaired by image/extracted text formatting.

**BATES STAMPING**

The parties agree to stamp every document produced with a unique Bates number. Bates numbers must be a constant length that is zero padded (e.g., ABC0000001). Bates numbers cannot contain spaces. Bates numbers must be sequential within a document and document families (e.g., email with attachments) must be produced together and sequentially Bates numbered. If a Bates number is skipped, that number should be contained in the privilege log or the responding party must notify the requesting party of the skipped Bates range.

**TEXT FILES**

Extracted text will be produced, if possible, for all ESI records and all imaged hard copy documents in a document level, multi-page text file format, with a corresponding path reference appearing in the Text Precedence field of the load file. If a record does not have extractable text, then an industry-standard optical character recognition process will be executed, and OCR-rendered text will be provided in the multi-page text file instead.

The file name of each text file will equal the production BATESBEG number of the corresponding page and have a .txt file extension. The text files will be provided in a folder called "TEXT" on the production media.

**CONFIDENTIALITY DESIGNATIONS**

Responsive documents in TIFF or JPG format shall be stamped with the appropriate confidentiality designation in the left footer in accordance with the Stipulated Protective Order in this matter. Each responsive document produced in native format shall have its confidentiality designation stamped in the left footer of the corresponding image placeholder. Confidentiality designations shall be included in the metadata fields provided in the load files.

**DATA AND IMAGE LOAD FILES**

Each document shall be produced as a single record. Multiple separate documents should not be combined and Bates numbered as a single record for production purposes.

Associated metadata and links to the .txt files and native files, where applicable, for each produced record will be provided in a document level delimited load file format (".dat"). This load file shall have a header row, with each line representing one document.

All of the metadata field information that is available from the native ESI source files will be extracted therefrom and will not be altered or modified from the original. The metadata provided in the .dat load file shall include the following fields, to the extent the information is applicable and available:

| FIELD NAME | CONTENTS |
|---|---|
| BATESBEG | Beginning production number |
| BATESEND | Ending production number |
| BEGATTACH | Beginning production number of parent in a family |
| ENDATTACH | Ending production number of last page of the last attachment in a family |
| ATTACHCOUNT | Number of attachments |
| PAGECOUNT | Number of pages in document for documents produced in TIFF/JPG form. For documents produced in native, page count will be 1 (for placeholder). |

| FIELD NAME | CONTENTS |
|---|---|
| CUSTODIAN | Custodian that possessed the document, email, or electronic file |
| DUPLICATE CUSTODIANS | Other custodian(s) that possessed the document, email, or electronic file; multiple custodians separated by semicolon |
| FILE NAME | Native of original electronic file as collected |
| EMAIL SUBJECT | Subject field extracted from email message |
| FILEEXT | File extension for email or electronic document |
| FILESIZE | Size of application file document/email in KB |
| MD5HASH | Unique electronic signature hash value of email or electronic file |
| AUTHOR | Author information as derived from the properties of the document |
| TITLE | Title of the document as derived from the properties of the document |
| DATE CREATED | Date non-email electronic file was created as extracted from file system metadata (mm/dd/yyyy format) |
| TIME CREATED | Time non-email electronic file was created as extracted from file system metadata (hh:mm format) |
| DATE LAST MOD | Date non-email electronic file was modified as extracted from file system metadata (mm/dd/yyyy format) |
| TIME LAST MOD | Time non-email electronic file was modified as extracted from file system metadata (hh:mm format) |
| EMAIL FROM | "From" field as extracted from email message |
| EMAIL TO | "To" field as extracted from email message |
| EMAIL CC | "CC" or "carbon copy" field as extracted from email message |
| EMAIL BCC | "BCC" or "blind carbon copy" field as extracted from email message |
| DATE SENT | Sent date of email message (mm/dd/yyyy format) |
| TIME SENT | Sent time of email message, time zone set to UTC (hh:mm format) |
| DATE RECEIVED | Received date of email message (mm/dd/yyyy format) |
| TIME RECEIVED | Received time of email message, time zone set to UTC (hh:mm format) |
| TIMEOFFSET | Native Time Zone Offset (from UTC) |

| FIELD NAME | CONTENTS |
|---|---|
| CONFIDENTIALITY | Text of Confidentiality Designation, if any, in language as provided by the Stipulated Protective Order |
| REDACTIONS | Identifies whether a document contains redactions and may be blank if no redactions are present in the document |
| TEXT PRECEDENCE | Relative File Path to *.txt file containing Extracted or OCR text within the TEXT folder |
| FILE_PATH | Relative file page to each native file on production media provided within the NATIVES folder |

The parties agree that each party may use the standard field names as they appear in their eDiscovery review software database, provided that the contents of such fields remain consistent as those outlined in the table above.

A properly formatted image load file (".opt") will be provided with the TIFF/JPG images as a page-level delimited load file to load images, with each line representing one image. This load file shall have ANSI/Western European encoding.

Metadata and image load files (.dat and .opt) will be provided in a folder called "DATA" on the production media.

**TIME ZONE**

The time stamps and metadata for all records shall be normalized to UTC.

**HIDDEN CONTENT AND TRACKED CHANGES**

Microsoft Word and other word processing files will be rendered to TIFF/JPG images so as to show tracked changes, hidden text, comments, headers, and field codes.